GRACE M. KIRST AND GORDON W. KIRST, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kirst v. Commissioner
Docket No. 31360-81.
United States Tax Court
T.C. Memo 1983-154; 1983 Tax Ct. Memo LEXIS 635; 45 T.C.M. (CCH) 1053; T.C.M. (RIA) 83154; March 22, 1983. Grace M. Kirst and Gordon W. Kirst, pro se. Deborah A. Butler, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent has determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Sec. 6653(a),
I.R.C. 1954
Year
Deficiency
Addition to Tax
1976
$2,949
$147
1977
5,106
255
1978
6,483
324
1979
6,769
338
The issues for decision are as follows: 1. Whether the assessment of deficiencies for 1976 and 1977 *637 is barred by the 3-year statute of limitations prescribed by section 6501(a); [1]
2. Whether the creation by petitioners of a trust entitled the Gordon W. Kirst Family Trust to which they purportedly transferred parts of their salary incomes and certain incomes from property relieves petitioners of income tax liability on any portion of their earnings; 3. Whether petitioners are entitled to deduct amounts paid for the preprinted documents used to create the trust; and 4. Whether petitioners are liable for additions to tax pursuant to section 6653(a). FINDINGS OF FACT At the time they filed their petition, petitioners Gordon W. Kirst and Grace M. Kirst were legal residents of Albuquerque, New Mexico. They timely filed joint Federal income tax returns for 1976, 1977, and 1978. On January 8, 1980, petitioners signed, and on January 15, 1980, an official of the Internal Revenue Service accepted, a consent to extend the time to assess any deficiency in income tax for 1976 to December 31, 1980. On August 18, 1980, petitioners signed, *638 and on August 25, 1980, an official of the Internal Revenue Service accepted, a consent to extend the time to assess any deficiency in income tax for 1976 and 1977 to December 31, 1981. On October 19, 1981, respondent mailed the notice of deficiency determining the income tax deficiencies set forth above. The determined deficiencies arise from petitioners' alleged creation of a trust entitled the Gordon W. Kirst Family Trust by an instrument dated in August 1976. [2] Under the terms of this instrument, James M. and Loretta D. Svejcar (the Svejcars) were named as trustees, and were granted broad powers exercisable upon majority vote. Petitioners purported to convey to the Svejcars, as trustees "certain properties, business projects, operations under way or contemplated, dealing in equities, formulae, entities, patents, copyrights, business good will, or other business desired to be engaged in by said Trustees." Beneficial interests in the trust, which entitled their owner to pro rata distributions of income or corpus, were declared to be "non-negotiable and transferable, all or in part, only to a parent * * *, to a brother, or a sister of the initial owners" of the beneficial certificates. *639 Mrs. Kirst held 20 units of beneficial interests; the record does not reveal the ownership of the remaining 80 units. The Svejcars resigned as trustees in 1977. Petitioners became trustees at least as early as 1977 and continued as such through at least 1979. Petitioners' son, Jon, was also made a trustee at some point. Petitioners deducted $3,107 for 1976 as the cost of papers and assistance obtained in the creation of the trust. Respondent disallowed the deduction on the ground that "it is a nondeductible personal expense under section 262." During 1976, 1977, 1978, and 1979, Mr. Kirst was employed as a sales representative by Nabisco, Inc. His earnings from that company were as follows: Year
Earnings
1976
$17,580.53
1977
17,635.05
1978
20,266.49
1979
22,206.38
In those same years, Mrs. Kirst was employed by Montgomery Ward and had earnings as follows from that company: Year
Earnings
1976
$11,010.17
1977
12,593.04
1978
13,859.74
1979
13,948.93
Mr. and Mrs. Kirst's total earnings were shown on the income tax returns for these years, but in computing *640 taxable income such total amounts were reduced to reflect dealings with the family trust. For 1976, petitioners' taxable income was reduced by $9,896, described as an adjustment to income for "Payment of Nominee Income to the GORDON KIRST FAMILY TRUST I.D. No. 85-6081837." For 1977, 1978, and 1979, the full amounts of their employment earnings were shown on their returns as "wages, salaries, etc." but schedules attached to the returns treated those amounts as nontaxable "Nominee income"; the only amounts treated as taxable to petitioners were designated as "Trustee fee" or "fees." In the notice of deficiency, respondent determined that the full amounts reported as nominee income are taxable to petitioners and that the amounts reported as trustees fees and trust distributions should be eliminated from taxable income. The following table summarizes the adjustments made to petitioners' income for 1976, 1977, 1978, and 1979: 1976
1977
1978
1979
Nominee Income
$9,896 $30,228 $34,126 $36,155 Unearned Income
19 110 Trust Distributions
(1,778)
(306)
Net Rental Income
(Loss)
(777)
750 1,536 Trustees Fees
(9,280)
(13,028)
(13,850)
Total Net Increase
in Income
$8,137 $19,975 $21,848 $23,841 *641 OPINION 1. Statute of Limitations Issue
As disclosed by our Findings of Fact, petitioners by written consents, [3] accepted by the Internal Revenue Service before the 3-year statute of limitations of assessments had expired, agreed to extend the limitations period for deficiency assessments to December 31, 1981, for the years 1976 and 1977. Because the notice of deficiency was mailed on October 19, 1981, within the extended period for the years 1976 and 1977, and within the 3-year period as to 1978 and 1979, it was clearly timely. Nonetheless, petitioners argue that nowhere in the statute does it say that their petition in this Court extends the period for assessment and that, therefore, any deficiencies for 1976, 1977, and 1978 are barred.Petitioners overlook section 6503(a), which provides, in pertinent part: (1) General Rule.--The running of the period of limitations provided in section 6501 * * * on the making of assessments * * * shall * * * be suspended * * * if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the *642 Tax Court becomes final * * *, and for 60 days thereafter. The statute of limitations provisions, therefore, erect no time bar in the instant case. 2. The Family Trust Issue
Both petitioners, as detailed in our findings, were employed and earned salaries during all 4 years here in issue. To their joint Federal income tax returns for those years are attached the respective Wage and Tax Statements, Forms W-2, filed by their employers showing the amounts of salaries paid to them. Those *643 salaries were, of course, gross income. They here contend, however, that, because they created their family trust in August 1976, the portions of their salaries that they transferred to the trust are not taxable to them.As stated in an exhibit introduced by petitioners, they argue that "the income earned by trustees in the performance of duties on behalf of the trust and who have contracted to turn over all such money to the trust is valid, and that such income is not taxable to the agent-trustee." Petitioners' contention is without merit. Petitioners are not relieved of tax on their salaries even if they transferred that income to the trust. As stated in Schulz v. Commissioner,686 F.2d 490, 493 (7th Cir. 1982), affg. a Memorandum Opinion of this Court: Since the seminal case of Lucas v. Earl,281 U.S. 111, * * * it has been clear that income is taxed to the person who earns it, regardless of what arrangements he makes to divert the payment of it elsewhere. This is a rule of imputation that has nothing to do with, and does not affect, the validity *644 of the particular arrangement for purposes other than computing income taxes. [Fn. refs. omitted.] Nothing in the record even suggests that the trust dealt with petitioners' employers or that it could compel petitioners to work or could determine the amount of income petitioners would receive. The trusts received only such portions of petitioners' salaries as petitioners transferred to it. See Vnuk v. Commissioner,621 F.2d 1318, 1320-1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court. Even assuming the trust had any economic reality and was not a sham, the transferred amounts of earned compensation are taxable to petitioners. In addition to their salary income, petitioners seek to escape tax on small amounts of interest, dividends, and rental income. The record is not clear as to whether petitioners held title in their own names to the bank accounts, stock, and real property that produced this income or whether those property items were held by the trust. If the interest, dividends, and rents were produced by property owned by petitioners and were merely assigned to the trust, such income is taxable to petitioners under the assignment-of-income *645 principles discussed above. On the other hand, if the properly producing that income was owned by the trust, the earnings would still be taxable to petitioners by reason of the grantor trust provisions of sections 671--677. Under the grantor trust provisions, a grantor of a trust [4] who has retained certain powers which may be exercised without the approval or consent of an adverse party is treated as the owner of the trust and taxed individually on the income. The Svejcars, apparently close friends of petitioners, were originally designated as trustees of the trust and had no adverse interest in the trust. [5] The Svejcars resigned in 1977, and both Mr. and Mrs. Kirst became trustees at least as early as 1977 and continued as such (joined at some point by their son Jon) at least through 1979. *646 The trust instrument authorized the trustees acting by majority vote to invest and reinvest the trust funds, "exercising their best judgment and discretion * * *, making distributions of portions of the proceeds and income as in their discretion * * * should be made." Petitioners have not shown that anyone other than Mr. and Mrs. Kirst (under the New Mexico community property laws) owned any beneficial interests in the trust and they were, therefore, the only ones who would benefit from distributions. The trust, thus violates section 674(a)[6] because petitioners, alone or in conjunction with nonadverse parties, had unconstrained power to dispose of the beneficial enjoyment of the trust income and corpus; the trust also violates section 677(a)[7] because petitioners had unconstrained power to distribute trust income or accumulate it for future distribution to the grantor or the grantor's spouse. [8]Schulz v. Commissioner,supra at 497; Vnuk v. Commissioner,supra at 1321; Hanson v. Commissioners,696 F.2d 1232 (1983), affg. a Memorandum Opinion of this Court; Vercio v. Commissioner,73 T.C. 1246 (1980); *647 Markosian v. Commissioner,73 T.C. 1235 (1980). Petitioners are, therefore, taxable on the income in dispute. *648 3. Deductibility of Cost of Family Trust Package
Petitioners argue that they are entitled to deduct the $3,107 they paid for the packet of materials used to create the family trust under section 212. That section, insofar as it is here pertinent, allows a deduction for all the ordinary and necessary expenses incurred during the taxable year for the production or collection of income and for the management, consevation, or protection of property held for the production of income. The trust instrument declares that the purpose of the trustees: shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by the Creator hereof and Grantor hereto to be the corpus of This Trust, so that he can maximize his lifetime efforts through the utilization of his Constitutional Rights for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare; all of which GORDON W. KIRST feels he will achieve because they are sustained by his Religious and/or Philosophical Beliefs. This *649 Court, in Epp v. Commissioner,78 T.C. 801 (1982) and Luman v. Commissioner,79 T.C. 846, 856 (1982), has held that expenses incurred for "rearranging title to income-producing property, for planning one's personal and family affairs (such as establishing trusts for family members or making gifts), or for retaining ownership of property are not deductible" under section 212 but are nondeductible personal expenditures within the meaning of section 262. We adhere to that holding in the instant case. 4. Additions to Tax Under Section 6653(a)
Section 6653 provides that, if any part of any underpayment of tax is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), a 5-percent addition to tax shall be imposed. We must sustain the addition to tax in the instant case. See Vnuk v. Commissioner,supra at 1321; Hanson v. Commissioner,supra at 1234; cf. Schulz v. Commissioner,supra at 497. *650 According to the testimony, petitioners purchased the packet of materials that they used in creating the trust from Barbara Hutchinson, who is not a tax lawyer. There is no evidence of record that petitioners discussed the trust with anyone purporting to have any knowledge of tax law other than the individuals who sold the trust packet to them. No other evidence was offered to avoid the application of the additions to tax. As with other issues raised in the notice of deficiency, petitioners have the burden of proof. In filing their income tax returns in which they claimed the benefit of the assignment of large portions of their salaries to the trust, they disregarded one of the basic principles of the tax law--that income is taxable to the one who earns it and enjoys its benefits. Finding an avenue of escape from that doctrine is not easy. Schulz v. Commissioner,supra at 497. They have not shown that they obtained the advice of an attorney or qualified accountant that the family trust scheme would circumvent that principle and the grantor trust provisions, and, indeed, "[n]o competent lawyer could" so advise them. Hanson v. Commissioner,supra at 1234. *651 This evidence, or lack of it, strongly suggests that petitioners did not exercise due care in calculating their tax liabilities. We also note that the papers filed with the Court are sprinkled with standard frivolous tax protestor arguments--that their requests for a jury trial should be granted, that their sworn tax returns should be upheld rather than the unsworn notice of deficiency, that their income tax returns were filed under duress, and that disallowance of the trust denies them their donstitutional right to contract and is not consistent with due process of law guaranteed by the Fourteenth Amendment.Although petitioners complied with the Court's rules in stipulating facts and presenting their evidence, these requests and arguments suggest that petitioners, when they filed their returns, intentionally disregarded the revenue laws in attempting to deflect the income to the trust. We hold that the section 6653(a) addition to tax is applicable. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. The trust adopted a taxable year running from Sept. 1 to Aug. 31.↩
3. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (c) Exceptions.-- (4) Extension by agreement.--Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.↩
4. Although Mr. Kirst was designated as grantor, under the community property laws of New Mexico, the Kirsts' incomes and property were owned one-half by each, and Mrs. Kirst, was, therefore, in substance a cograntor. ↩
5. The Svejcars were "nonadverse" parties to the trust within the meaning of secs. 674(a) and 677(a), infra.↩
6. SEC. 674. POWER TO CONTROL BENEFICIAL ENJOYMENT. (a) General Rule.--The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party. ↩
7. SEC. 677. INCOME FOR BENEFIT OF GRANTOR. (a) General Rule.--The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be-- (1) distributed to the grantor or the grantor's spouse; (2) held or accumulated for future distribution to the grantor or the grantor's spouse; ↩
8. The fiduciary returns filed for the trust indicate that, in the 3 years from Sept. 1976 through Aug. 1979, distributions were made to Jon and to Barbara E. Stephenson. This suggests that Jon and Barbara may have owned beneficial certificates; if so, Jon, as trustee and beneficial owner, might have been an adverse party. Even if he was an adverse party, the decisions on behalf of the trust could be made by a majority of the trustees; at no time could Mr. and Mrs. Kirst have been outvoted by adverse parties.↩